Okay, Mr. Sokolow, whenever you're ready. Thank you, Your Honor. Thank you. Welcome back. Thank you very much. Did you get to go home or did you have to stay in New Orleans? Oh, no. I stayed in New Orleans, Your Honor. Well, I hope you can go home tonight. I'm hoping. Do I keep watching the weather, Your Honor? May it please the Court. The District Court reversibly erred by ordering restitution in this case because the expenses incurred during a private investigation that was requested by the government are not covered under Section 3663A.B.4. The Mandatory Victim Restitution Act requires defendants to reimburse the victim for lost income, necessary child care, transportation, and other expenses incurred during the participation or prosecution of the offense. In Lagos v. United States, the Supreme Court held that a company's private expenses for private investigation that took place prior to the government's investigation or prosecution are not covered under subsection B.4. But it left open whether those expenses would be covered where the government requested the investigation. But the Court's analysis in Lagos of the phrase other expenses shows that the $552,000 that the FBI's expense are not covered by Section 30, other expenses in 3663A.B.4. In Lagos, the Court narrowly construed the term other expenses and stated that lost income, child care expenses, and transportation expenses are the kind of expenses a victim would incur when it meets, travels to meet with the government investigators, participate in the government's investigation, or attend a grand jury. The Court made clear that — Well, do you agree that we're left with a question of whether or not the fact that the government requests or suggests that assistance is enough? That's what we have here that was not present earlier in Lagos. Correct, Your Honor. That is the question the Court left open because it was not before the Court because the corporation in that case did the investigation before the government prosecution. The Court left open whether these expenses would be covered as other expenses if the government requested the investigation. But the Court's analysis of the phrase, the judicial — the statutory construction of the phrase other expenses is undeniable. The Court used the principle of nosetur associis to say that the phrase other expenses was confined by the terms preceding it and that the term other expenses does not cover expenses for accountants, expenses for lawyers, expenses for experts, which are just the kind of expenses that BP spent in this case in its private investigation at the government's expense. So the Supreme Court may have sliced off a small end of the loaf of bread because the technical issue was not in front of it, but that cannot undo or contradict the fact that the Supreme Court in Lagos necessarily interpreted the term other expenses in terms of the terms that preceded it and narrowed it to only a certain kind of expenses. Well, what do you do to the suggestion that the presence of a request does bring it back within the narrow reading of the Court itself if the government requests it? In a situation where — particularly in a situation where you have complex digital material, et cetera, et cetera, the victim here may be better equipped to assist in the investigation than the government itself. In other words, this thing can move much more rapidly, and they have a lot of incentives to do that. And so the FBI or whomever, the agency says, hey, fellows, well, you know, why don't you help us out here? Why don't you run this, your machinery here, and run down these things? And that means that they are assisting, affording assistance in the investigation itself. Well, there are two answers to that, Your Honor. First of all, it wouldn't change the statutory construction. The statutory construction of other expenses and no citor associus still is interpreted in the same way. It doesn't say, okay, now the language is completely different. Well, if the FBI had — agencies had done this work, then that would count, right, for restitution? No. Oh, if the FBI had done it, no, it wouldn't count for restitution. It would be a cost to the — it would be a cost of the government. That would go back to the other — another different question, yeah. And let me just add, that's part of the problem with what was argued in — by — I think it was GE in Lagos, or the corporation in Lagos. The statutory interpretation under, you know, no citor associus doesn't change, and the fact that the government outsources its investigation to somebody else, to some corporation, doesn't bring those expenses within the statutory construction of the terms. And the Supreme Court added, by the way, when the corporation made that argument in Lagos, the Supreme Court said, look, we're interpreting the statute here, and we're not saying you can't get reimbursed. You still have the remedy to go sue this person, to go sue the person for the money. So the Supreme Court considered that argument and said, go sue them. The courts are available to you, but that doesn't change the statutory construction. I don't know who's going to pay all this money, but — that we're arguing about, but — Well, that's what the civil courts are for, Your Honor. I mean, Congress — But you've got to have a pocket out there, I'll administrate the practical thing. Well, that's — Congress passed a particular statute — I understand that. I'm not — I just — we argue that it's a Brett Ford principle. But I'm sure the BP can find a lawyer or two to file a civil suit in court so that it might try to recover its money to the extent possible. Your Honors, for those reasons, I respectfully request that you vacate the order of restitution and remand with the instructions that no restitution be awarded. Thank you very much. You've saved time for rebuttal, Mr. Steyer. Thank you, Your Honor. Ms. Bari? May it please the Court, Loretta Bari for the United States. The canons of construction have absolutely no application in this case because they would defeat congressional intent to make the victim, who is in this case a corporation, whole. The text of the statute is unambiguous. It covers a full range of expenses that a victim might incur, the victim being an individual person, a corporation, or an employee of a corporation. The statute covers the scenario where an individual person goes down to the FBI office and gives an interview, participates in the investigation, or when, let's say, an individual person goes down to the courthouse to testify, Congress specifically enumerated expenses for those types of activities where the person lost income, where they incurred child care expenses and transportation. Now instead of an office visit, in this case, we have BP, who is a corporation, the FBI, instead of asking the victim to come down to the office for an interview, asks BP to participate by conducting its own computer forensics to advance the investigation. And this is covered by the residual catch-all phrase, other expenses. BP is not going to incur child care costs, but Congress wanted to make sure that BP could recover its participation in the investigation, those costs. And in this case, the FBI asked BP to do these things to advance the investigation in the most efficient way possible, to narrow the scope of the investigation. There were 80,000— What if BP were going to do that out of its own self-interest, and they'd like to share it with them? Under the Lagos case, if—under those facts, that would be before the investigation began and they would not be recoverable. But in this case, three hours after BP received the extortion email, they immediately contacted the FBI. And after that, the FBI directed them to conduct computer forensics, software server research, audio file reviews, and employee overtime in order to identify the perpetrator of the offense as quickly as possible because, as the regional director testified, BP had very sophisticated systems. The files were massive. There were over 80,000 employees in 80 countries involved, hundreds of millions of documents. This likely narrowed the scope of the investigation to find the perpetrator of the offense as quickly as possible. Counsel, it seems to me when you say that statutory interpretation or rules of construction are irrelevant, it's a bit of an overstatement in my view. It seems like there are two questions on the statutory interpretation we have here. And it could be that the Supreme Court only reserved one of those two. We have, what are the proper kinds of expenses for which reimbursement is proper? In the other, what is the proper kind of investigation for which reimbursement is proper? In that final or next to last paragraph, the Supreme Court was saying a private investigation at the direction of the government might be the proper kind of investigation. But you still have the nosoterious problem of what are the proper kinds of expenses. You say that all necessary expenses, I think, you can correct me if that's not quite what you said, that all necessary expenses are reimbursable. I can certainly say that we may well find merit in saying a private investigation at the direction of the government is a covered investigation. But I am very troubled by what the majority or what the court said as to the importance of the kinds of It doesn't say all expenses incurred by the victim. It gives us some examples. And that's supposed to have substance to it generally. And the Supreme Court says very specifically it has merit here. Well, Your Honor, I don't know how else a victim corporation could participate in a criminal investigation than the facts that we have here. And if Congress did not want those expenses to be recovered, it would have left just the enumerated clause. Well, it's easy to say what Congress would have done if it wanted something. That's all our speculation. It seems to me what we have is what they did. And what they did is give a very narrow category of expenses. And they certainly did it in the context of private individual or something other than corporate victims. But nonetheless, we have those categories. It's something that we're going to have to work with. And I'm not sure you've quite given me at least something very convincing. Well, Your Honor, the Lagos limitation focused very heavily on the during the investigation. So, again, getting back to my point of I don't know how else a corporation would participate in a criminal investigation during an investigation and incur costs that they are asked to incur to advance and participate in a criminal investigation and then not be recovered by the statute. Well, a corporation could participate in the government's investigation as well. And if they were, would they be entitled to expenses other than these categories here? Maybe, maybe not. Congress certainly could have said that. But it seems to me that the premise for these expenses seems to be individuals, not corporations. The premise for individuals? The premise for the kind of victim they're talking about is an individual. And Congress, if they wanted to deal with corporations and the kind of different kinds of expenses they would incur, certainly could have written this better. No, and the reason I would say that's incorrect, Your Honor, is if you look at what's covered by the statute, the types of offenses that are covered are bank fraud. Who's the victim there? The bank fraud in that situation is the financial institution. You're saying the very substance of this is for corporations and banks? Then why isn't the very substance of this reimbursement that? Because it covers both, Your Honor. That's the point of it. It covers individuals. It covers persons. And as the Supreme Court in Lago said, it even covers corporate employees. So in order to have that full range of coverage for different types of victims, Congress enumerated certain expenses for the individuals, but the residual clause did leave open that protection for corporations. And there's no doubt that the statute does cover victims that are corporations. That is inside the Lago's opinion. The Supreme Court recognized that the corporation was the victim. That was GE. In the Chan case, and the Sexton case, which is a Sixth Circuit case, it was post-Lago's, but in that case they recognized that the victim there was the bank or the financial institution. And in Chan, I realize that is a district court case, but again, there you had a company who was incurring cost of document compilations and employee preparations for interviews with the government, and they incurred costs during participation in a securities fraud investigation, and the court said those were recoverable under this statute. The only limitation in Lago's IC is that the expenses must be necessary and incurred during the participation in a criminal investigation or a government prosecution. And there's no dispute in this case, Your Honor, that all of the expenses in this case identified the defendant as the extortionist. Unlike GE and Lago's, where the expenses were ancillary and were consequential, the defendant even conceded in this case that the expenses were appropriate, and that's at record page 143. There's no attenuation in this case. There's a causal link between these offenses and the expenses that BP incurred at the direction of the FBI to identify the defendant as the perpetrator in this offense. And I'd like to remind the court that none of these expenses would have been incurred had it not been for the defendant's extortion of BP in this case. And Judge Lake was very careful to omit the types of expenses that were not incurred during the criminal investigation or prosecution. Because this case fits squarely within the confines of Lago's, it is not a private investigation that occurred before the government's investigation. If there's no further questions, I respectfully request that the judgment be affirmed. All right. Thank you, Ms. Perry. Mr. Sokoloff? The government said that the principles of statutory construction don't apply here, but that means the government's complaint is with the Supreme Court, not this court, because the Supreme Court already applied those principles to the phrase other expenses. Number two, the government says, well, how else would a corporation participate in the government's investigation? And Lago's is very clear on page 1688 when it talks about the specific items covered by the statute, and it says that, you know, child care, transportation expenses, lost income, are the kinds of expenses a victim would incur when he or she or a corporation's employees like GEs go down to meet with the government or testify. So, yes, if you go down and meet with the government and testify, your corporate employees can get those expenses, but that's far different than what happened here. And, finally, I would like to just point out the government relies on Sexton, but Sexton held this is the Sixth Circuit case. Sexton held that because the defendant did not object to restitution, the district court did not make specific findings, and the court's restitution award was not plain error. So that was a case where there was nothing in the record where the defendant's complaint could be adjudicated. In O'Neill, which is the Fifth Circuit 2018 case, the court held that the defendant forfeited the contention because he failed to adequately brief it. And in Chan, the district court allowed some expenses that were involved with the government's, with the preparation for employees to meet with government witnesses, but it disallowed other expenses under Lagos, like insurance coverage, potential checks for background of employees, paralegal fees, clerks' fees, lawyers' fees. And so those cases just don't help the government at all. For these reasons, Your Honor, I request that you vacate the restitution order and remand for an entry of judgment with no restitution. Thank you very much. Thank you, Mr. Sokolow. Your case is under submission. The court will take a brief recess.